IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DERRICK ARCENEAUX, | § | |
| TDCJ #1247054, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-1953 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

The petitioner, Derrick Arceneaux, is an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). Arceneaux has filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction. Arceneaux has included a short supplemental memorandum with his petition. The respondent has answered with a motion for summary judgment, arguing that Arceneaux is not entitled to relief. (Doc. # 6). Arceneaux has filed a response. (Doc. # 7). After considering all of the pleadings, the records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons that follow.

## I.    BACKGROUND

A state grand jury returned an indictment against Arceneaux in cause number 974150, charging him with aggravated robbery with a deadly weapon, namely, a firearm. The State enhanced the indictment for purposes of punishment with allegations that Arceneaux had at

least two prior felony convictions.  On June 24, 2004, a jury in the 180th District Court of

Harris County, Texas, found Arceneaux guilty as charged of aggravated robbery with a

deadly weapon.  After Arceneaux conceded that the enhancement allegations were true, the

same jury sentenced him to serve thirty-five years in prison.

On direct appeal, Arceneaux argued that the evidence was legally and factually

insufficient to support the aggravating element of the robbery because there was no proof that

he used or exhibited a firearm to commit the offense.  The intermediate court of appeals

rejected Arceneaux's arguments and affirmed the conviction after making the following

findings of fact based on the evidence at trial:

Facts

On April 21, 2003, shortly after 5:00 a.m., Antonio Garcia stopped at
a doughnut shop to purchase doughnuts and coffee. Garcia planned to use a
pay telephone in the parking lot, so he parked his car near it. As Garcia looked
through his wallet for a telephone number, Arceneaux approached his car,
reached in through the window, and removed the keys from the ignition.

Arceneaux then opened the car door and told Garcia that he was a
narcotics police officer. He told Garcia that he had a gun, and ordered him to
get out of the car: "Get out from the car. I got gun. I got pistol. Don't do
nothing or I can use it with you." Garcia quickly realized that Arceneaux was
not a police officer. Arceneaux grabbed Garcia's wallet, looked through it, and
stuffed it into his own pants. Arceneaux ordered Garcia to take off his socks
and shoes to demonstrate that he did not have money or drugs hidden in them.
Arceneaux then started looking through Garcia's car and asked Garcia if he
had additional money with him. After Arceneaux finished his search of the car,
he pushed Garcia to the ground and ordered him to remain there. Arceneaux
then fled the scene with another male in a white Cadillac.

Throughout the robbery, Arceneaux only used one hand — he kept the
other hand concealed beneath his shirt. Garcia believed Arceneaux's threat that

2

he carried a pistol, though Garcia never saw a gun. Garcia testified that during the robbery he was scared for his life.

Garcia saw a portion of the Cadillac's license plate as it drove away. A customer in the doughnut shop obtained the entire license plate number. Later that day, the police located a white Cadillac with a matching license plate number. As the police towed the car, Arceneaux and another male appeared at the scene. Arceneaux claimed ownership of the car. He also provided the police officers with several false names. The police officer arrested Arceneaux, searched the car, and discovered Garcia's bankcard inside it. The police never found a firearm.

*Arceneaux v. State*, 177 S.W.3d 928, 929 (Tex. App. — Houston [1st Dist.] 2005). Arceneaux filed a *pro se* petition for discretionary review with the Texas Court of Criminal Appeals to challenge the appellate court's conclusion that the evidence was factually sufficient. The Texas Court of Criminal Appeals refused Arceneaux's petition without a written order.

Arceneaux challenged his conviction further by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure. In that application, Arceneaux argued that his conviction should be set aside because: (1) the trial court improperly instructed prospective jurors about the definition of reasonable doubt; (2) the prosecutor violated his right to a fair trial by using peremptory strikes against "Black Veniremen who were the same Cognizable Race" as Arceneaux; and (3) the trial court abused its discretion by admitting a pistol into evidence for demonstrative purposes. In addition, Arceneaux complained that he was denied effective assistance of counsel at trial. The state habeas corpus court, which also presided over the trial, entered findings of fact and concluded that Arceneaux was not entitled to relief. The Texas Court of Criminal Appeals

agreed and denied relief based on findings and conclusions of law made by the trial court. *See Ex parte Arceneaux*, No. 66,878-01 (Tex. Crim. App. Feb. 28, 2007).

Arceneaux now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge his state court conviction.  Here, Arceneaux contends that he is entitled to relief for the following reasons:  (1) there was factually and legally insufficient evidence to support his conviction; (2) the trial court violated his right to due process when it gave potential jurors an improper definition of "reasonable doubt" during voir dire; (3) the prosecutor violated his right to a fair trial by an impartial jury by striking "Black veniremen" from the panel; (4) the trial court abused its discretion by admitting a pistol into evidence as an exhibit; (5) he was denied effective assistance of counsel at trial because his attorney failed to raise certain objections; and (6) he was denied effective assistance of counsel on appeal."[1] In a separate ground for relief, Arceneaux argues that he is entitled to relief because of the cumulative effect of the errors that occurred during his trial and direct appeal.  The respondent has filed a motion for summary judgment, arguing that Arceneaux is not entitled to relief on any of his claims under the governing federal habeas corpus standard of review set forth below.

## II.    STANDARD OF REVIEW

---

[1]    Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).  Consistent with the requisite theory of liberal construction, the Court has reordered the petitioner's claims below for purposes of analysis.

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996). Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001). Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication. *See* 28 U.S.C. § 2254(b). To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies. If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995). The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to

address those claims in the first instance.  *See Coleman*, 501 U.S. at 730; *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) (noting that the procedural default rule prevents habeas petitions from avoiding the exhaustion requirement by defaulting their federal claims in state court).

For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

> (1)   was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2);   *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning") (citation omitted), *cert. denied*, 535 U.S. 982 (2002). The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework.  *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Claims presenting pure questions of law and mixed questions of law and fact are governed by § 2254(d)(1).  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).  The Supreme Court has clarified that "clearly established Federal law" or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta," of decisions from the United States Supreme Court "as of the time of the relevant state-court

6

decision." *Carey v. Musladin*, — U.S. —, —, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A state court decision is "contrary to" clearly established precedent if the state court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law or if the state court decides a case differently from the Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application" of clearly established precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case.  *Id.*

Pure questions of fact are governed by § 2254(d)(2).  *See Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  This deference extends not only to express findings of fact, but to the implicit findings of the state court.  *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

Arceneaux has provided a supplemental memorandum along with his petition.  The Court notes, however, that Arceneaux does not reference any authority in his petition or supplemental memorandum and he makes no effort to show that he is entitled to relief under the governing federal habeas corpus standard of review.  Nevertheless, Arceneaux's claims

for relief are examined below under the applicable standard, beginning with Arceneaux's contention that he received ineffective assistance of counsel at his trial.

## III.   DISCUSSION

### A.     Ineffective Assistance of Counsel at Trial

Arceneaux contends that he is entitled to relief because he was denied effective assistance of counsel at trial because his attorney failed to raise objections to: (1) the interpreter's translation (from Spanish to English) of the victim's account of the offense; (2) a hypothetical question posed by the prosecutor during voir dire; and (3) impermissibly suggestive identification procedures employed by the police.  The state habeas corpus court, which presided over Arceneaux's trial and sentencing, rejected these claims on state habeas corpus review.  *See Ex parte Arceneaux*, No. 66,878-01 at 65-66.  In particular, the state court concluded that Arceneaux failed to show "that his counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different." *Id*. (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard)).

Presumably, Arceneaux contends that the state court's decision to reject his claim was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), which establishes the test for ineffective assistance of counsel.  To prevail on an ineffective-

8

assistance claim, Arceneaux must establish both elements of the *Strickland* test by showing that (1) counsel's representation was deficient, such that it "fell below an objective standard of reasonableness," and (2) that the deficient representation caused prejudice, which requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2002) (reciting the two-prong *Strickland* test). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

To establish deficient performance under the *Strickland* standard, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 543 U.S. 1056 (2005).

Even if defense counsel committed an error, a petitioner must still demonstrate actual prejudice as a result of his counsel's deficient performance. Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have

been different and confidence in the reliability of the verdict has been undermined.  *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)).  A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Each of the alleged deficiencies outlined by Arceneaux is examined separately below.

### 1.      Failure to Object to the Translation

The record reflects that the victim in this case, Antonio Garcia, spoke limited English and that he testified with the assistance of a Spanish-language interpreter who was identified as Mr. Dobson.  Arceneaux complains that his counsel was deficient because he failed to object adequately to Dobson's translation of certain questions posed to Garcia in English.  In particular, Arceneaux claims that Dobson added words to his Spanish translation of defense counsel's question about the perpetrator's appearance.  Arceneaux highlights the following exchange that occurred during his counsel's cross-examination of Garcia:

DEFENSE:    Did the robber have any facial hair?

GARCIA:       No, he was shaved.

DEFENSE:    May we approach the bench?

COURT:        Yes, sir.

                     (At the Bench)

DEFENSE:    I don't speak Spanish, but it sounds to me like Mr. Dobson is adding
                     stuff to what I'm saying.

                         In other words, I asked did [the robber] have any facial hair and
                     the guy sort of looked at Mr. Dodson and Mr. Dodson started saying

some other stuff to him, which sounded like goatee, mustache, those kind of things.

I don't think that's what his job is.  I mean, if the guy doesn't understand the question, I am happy to ask about goatees and mustaches and the like.

Now, admittedly I could be wrong; but that is what it appeared to my little uneducated ears.

COURT:      No, he's not supposed to be adding anything.  He's supposed to be translating word for word.

DEFENSE:   That's what I believe.

Court Reporter's Record, vol. 3, at 59-60.  After this exchange, the trial court excused the jury from the courtroom and asked the interpreter, Mr. Dobson, to explain his method of translation:

COURT:      I need to ask the interpreter a question.

DOBSON:   Yes, ma'am.

COURT:      Are you interpreting word for word?

DOBSON:   No, ma'am.

COURT:      Are you having any problems?  What is the issue?

DOBSON:    No issue; but, I don't translate word for word usually.

COURT:      Okay.  Tell me, are you adding words to what we are saying or what are we –

DOBSON:   For the record, I heard [defense counsel's] question of you or what he said at the Bench.

COURT:      Okay.

11

DOBSON:     And, yes, I did ask the defendant – I mean the witness, if it was a mustache or beard.

COURT:      Okay.  Okay.

DOBSON:     And in my opinion, if I may?

COURT:      Sure.

DOBSON:     In Spanish, usually witnesses don't understand if they are asked if a person has hair on their face.

COURT:      Okay.

DOBSON:     It's usually best to ask them if it's a beard or mustache.

COURT:      Okay.

DOBSON:     And if you want me to do it word for word, I will, Your Honor.

COURT:      Okay.

DOBSON:     I think it makes it more difficult, but I will.

*Id.* at 61-62.  After concluding this exchange with the interpreter, the trial court addressed

the witness to clarify the need for precise, word-for-word translation.  The trial court then

advised Garcia that if he did not understand the question he should just say so:

COURT:      Mr. Garcia, I just need to make sure that you understand you need to make sure that before you answer the question that you wait for the interpreter to give the interpretation one way or the other.

            And if you don't understand what he's asking you, just let us know that you don't understand the question.  Because it's important that we have as close to word for word translation of the questions as we can.

DOBSON:     Yes, that's fine.

COURT:      Okay.  All right.  We are all on the same page.

12

*Id.* at 62.   After this clarification was made, the jury returned to the courtroom and the

defense continued its cross-examination of the victim.   *See id.*

Arceneaux acknowledges that his attorney objected to the interpreter's translation, but

complains that his counsel should have moved for a mistrial.   According to Texas law, a

mistrial is a remedy that is appropriate for only a narrow class of highly prejudicial and

incurable errors:

> A mistrial is a device used to halt trial proceedings when error is so prejudicial
> that expenditure of further time and expense would be wasteful and futile.
> Thus, a trial court may properly exercise its discretion to declare a mistrial if
> an impartial verdict cannot be reached, or if a verdict of conviction could be
> reached but would have to be reversed on appeal due to an obvious procedural
> error.

*Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Sewell v. State*, 696

S.W.2d 559, 560 (Tex. Crim. App. 1983)).   Arceneaux fails to show that he was prejudiced

as a result of the interpreter's translation or that the error, if any, could not be cured by the

trial court's instruction.   Arceneaux does not otherwise demonstrate that he was entitled to

a mistrial under the circumstances of this case.   Absent a showing that he was entitled to a

mistrial, Arceneaux fails to demonstrate that his counsel was deficient for not requesting one.

Accordingly, Arceneaux fails to establish a valid ineffective-assistance claim in connection

with his trial attorney's failure to request a mistrial.

### 2.   Failure to Object to the Prosecutor's Hypothetical Question

Arceneaux complains that his counsel was deficient because he failed to object to a

hypothetical question posed by the prosecutor during voir dire.   Arceneaux points to the

13

following exchange between the prosecutor and two potential jurors, identified as Ms. Cook

and Mr. Hood, concerning a hypothetical scenario in which a defendant was accused of using

a firearm to commit an offense, but the firearm was never recovered by police and was not

admitted into evidence:

STATE:    . . . Miss Cook, [I] saw you nodding your head back there.  Can you
          think of a situation where a suspect in a criminal case, where they used
          a firearm, [but] might not have that firearm when they are arrested?

COOK:     Sure.

STATE:    Okay.  And what are some of those examples?  What might they have
          done with the weapon?

COOK:     Thrown it in a dumpster nearby.

STATE:    Miss Cook, would you require the State to actually produce a weapon
          in order to convict somebody of aggravated robbery?

COOK:     Would I – can you?

STATE:    I didn't phrase that very well.

          Hypothetically –

COOK:     I just want to make sure I understood before I answer.

STATE:    Hypothetically, you are on a jury.  And you are on this jury.  And the
          Judge talked to you about a deadly weapon, about a firearm.

          Let's say – and you don't know the facts of the case and the Judge
          doesn't know the facts of the case, but hypothetically if there was no
          weapon produced, but you had testimony that there was a weapon and
          you believed the witnesses beyond a reasonable doubt that there was a
          weapon, could you still convict, even without a weapon?

COOK:     Well, I think the Judge covered it and you are covering it when you are
          saying reasonable doubt.  And if I am the victim of an aggravated

assault, that I can look at the police officer and say, Somebody put a gun to my head, that they never find the gun, that's why it has got to be charged aggravated [sic].  And then it is up to the jury to decide whether it was or not.  And if you are saying that I was listening to somebody and I believed them, that's what you are asking us to do.

STATE:       Correct.

COOK:        Either believe or not.  So, no, I would not need [the State to produce the weapon], if I believed the testimony.

STATE:       Okay.  So, the answer to my question would be yes, if you believe the witnesses.

             If you believe the witnesses, could you convict without a weapon, if you believe the witnesses beyond a reasonable doubt?

             I think the answer to your question is yes, Mr.  — I think Mr. Hood.  What do you think about that?

HOOD:        Personally, no.

STATE:       You want — you would want to see the weapon.

HOOD:        I want to see the weapon.  People lie.  People could say anything.

STATE:       Absolutely.

HOOD:        So, don't trust them.

STATE:       You don't trust anybody?

HOOD:        No.  . . . .

Court Reporter's Record, vol. 3, Voir Dire, at 76-78.  The prosecutor then continued to question the potential jurors to see if there were any more who agreed with Mr. Hood and who were unable to believe witness testimony in the absence of a weapon in evidence.

Arceneaux argues that his counsel should have objected because the prosecutor's hypothetical scenario was an "improper commitment question" that attempted to bind or commit the potential jurors to a certain disposition or result.  Commitment questions that attempt to bind or commit prospective jurors to a position, using a hypothetical or otherwise, are considered improper under Texas law.  *See Atkins v. State*, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997).  Texas courts follow a three-prong test for determining whether a voir dire question calls for an improper commitment. *See Standefer v. State*, 59 S.W.3d 177, 179-82 (Tex. Crim. App. 2001). The first prong of the test requires a trial court to determine whether a particular question is a commitment question. *Id*. at 179. If the court determines that a particular question is a commitment question, then the trial court must decide whether the question is one that could give rise to a valid challenge for cause.[2] *Id*. at 181-82. If the question meets the "challenge for cause" requirement, then the court must determine whether the question includes only those facts necessary to test whether a prospective juror is challengeable for cause. *Id*.

In this instance, the prosecutor inquired whether any of the prospective jurors could convict a defendant of an aggravated offense without a firearm being admitted into evidence

---

[2]  In Texas, a challenge for cause is "an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (Vernon 2006). A challenge for cause may be made by either the State or the defense when, among other things, the prospective juror is "biased or prejudiced in favor of or against the defendant." *Id*. art. 35.16(a)(9). "Bias" means an inclination toward one side of an issue rather than to the other leading to the natural inference that the juror will not act with impartiality. *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. [Panel Op.] 1982). "Prejudice" means prejudging. *Id*.

if they believed the witness testimony beyond a reasonable doubt.  The State may challenge a juror for cause when the juror would hold the State to a higher standard than "beyond a reasonable doubt." *Coleman v. State*, 881 S.W.2d 344, 360 (Tex. Crim. App. 1994). Consequently, a prospective juror is properly subject to challenge for cause if he indicates that he could not convict based on the testimony of one witness, even if he believed that witness beyond a reasonable doubt. *See Castillo v. State*, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995).  Likewise, a potential juror may be properly challenged for cause and removed "if he cannot impartially judge the credibility of witnesses." *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000). This means that "jurors must be open-minded and capable of persuasion, with no extreme or absolute positions regarding the credibility of any witness." *Id*.

The prosecutor's hypothetical question in this case did not attempt to commit the prospective jurors to a specific set of facts.  Rather, it appears that the prosecutor was only attempting to inquire about whether a prospective juror could abide by the standard of proof. *See* Court Reporter's Record, vol. 3, Voir Dire, at 76-78.  Even if the inquiry that Arceneaux highlights could be construed as a commitment question, the prosecutor's hypothetical scenario appears reasonably calculated to lead to a proper challenge for cause regarding the issue of witness credibility and the State's burden of proof.  Moreover, the prosecutor's hypothetical fact pattern was limited and included only those facts necessary to establish such a challenge.  Under these circumstances, Arceneaux does not show that his attorney was deficient for failing to object.

17

Alternatively, even if counsel was deficient, Arceneaux does not show that the objection would have been sustained if it had been made.  Absent a showing that his counsel failed to raise a meritorious objection and that the outcome would have been different, Arceneaux fails to demonstrate deficient performance or actual prejudice.  *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").  It follows that Arceneaux fails to establish a claim for ineffective assistance of counsel in connection with his attorney's alleged failure to object to the prosecutor's hypothetical question during voir dire.

### 3.    Failure to Object to Identification Procedures

Arceneaux complains that his counsel was deficient because he failed to object to impermissibly suggestive identification procedures employed by the police prior to trial.  In particular, Arceneaux contends that the police used an unduly suggestive photographic array because, of the six black men featured in the "photo lineup," his picture stood apart because of his "very light complexion."  Arceneaux maintains, therefore, that his counsel should have objected to his out-of-court identification by the victim and his identification at trial.

The Due Process Clause prohibits identification testimony at trial that derives from impermissibly suggestive procedures, which may lead in turn to an irreparably mistaken identification.  *See Stovall v Denno*, 388 U.S. 293, 302 (1967).  For example, a conviction based on an eyewitness identification at trial following a pretrial photographic identification may be set aside "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).  Likewise, an identification obtained by an unduly suggestive line-up may be excluded if, based on the totality of circumstances, there is a likelihood that a misidentification has resulted.  *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

This record in this case undercuts any argument by Arceneaux that his identification was tainted by an impermissibly suggestive procedure.  A Spanish-speaking officer with Dallas Police Department, Officer Rudy Contreras, presented a photographic line-up to the victim (Garcia) for purposes of an identification.  *See* Court Reporter's Record, vol. 4, at 83-84.  Officer Contreras explained that he contacted Garcia about the identification because the victim lived in Dallas.  *See id*.  According to Officer Contreras, Garcia quickly identified Arceneaux, who was depicted in photograph number two of the six-photo array, as the person who robbed him.  *See id*. at 86.  The prosecutor presented the original and a copy of the photographic array shown to the victim.  *See* Court Reporter's Record, vol. 9, State's Exhibits 2, 2A.  The copy, which had been scanned into the computer and e-mailed to Officer

Contreras, was more blurry in quality when compared to the original.  Nevertheless, a review of the photographic array shows that it is not suggestive.

Garcia testified that Officer Contreras did not suggest to him at any time during the identification process which picture belonged to the suspect.  *See* Court Reporter's Record, vol. 3, at 40.  Garcia emphasized, repeatedly, that he clearly recognized Arceneaux as the man who robbed him.  *See id.* at 31, 41, 43.  Based on this record, Arceneaux fails to show that the pretrial procedures used to obtain his identification were impermissibly suggestive.

Moreover, even assuming that the pretrial identification was unduly suggestive, the totality of circumstances do not reflect that Arceneaux was misidentified.  In *Neil v. Biggers*, 409 U.S. 188 (1972), the Supreme Court applied a five-factor test to determine whether an identification is reliable: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.  *See Livingston v. Johnson*, 107 F.3d 297, 310 (5th Cir. 1997) (listing the factors outlined in *Biggers*, 409 U.S. at 199-200).  A review of the five factors supports a conclusion that the identification was reliable.

The testimony presented at trial shows that Garcia had ample opportunity to view Arceneaux at the time of the offense and that his description to police proved accurate. Garcia testified that Arceneaux robbed him at arm's length, grabbing his wallet, identification, and credit cards from him while forcing him to the ground.  *See* Court

Reporter's Record, vol. 3, at 24-36. Garcia testified that Arceneaux made him take his shoes off to see if he had money or drugs in his socks. *See id.* at 34-35. Garcia then watched Arceneaux depart in a white Cadillac. *See id.* at 35-36. The encounter was neither brief nor distant, lasting at least five minutes, and there was a close connection between the commission of the offense and the identification. *See id.* at 46.

The record discloses no factor that would have distracted Garcia's attention and Arceneaux does not propose any. Garcia testified that, although it was early in the morning, there was light enough to see. *See id.* at 37. Garcia was able to supply a description of Arceneaux to police along with a partial license plate number for the get-away vehicle. *See id.* at 37, 78, 92. A white Cadillac bearing a license plate that matched Garcia's description was later recovered by police with Garcia's stolen credit card inside of it. *See* Court Reporter's Record, vol. 4, at 16-17, 27-29. Garcia quickly identified Arceneaux from the photographic lineup as the man who robbed him. *See id.* at 86-88. Garcia was certain of the identification, which was made within days of the offense, and he was equally certain about the identification made at trial. *See id.* Moreover, Garcia testified that his identification of Arceneaux as the perpetrator was based on the robbery, and did not depend on the photographic array shown to him by Officer Contreras. *See* Court Reporter's Record, vol. 3, at 41, 43.

"The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Arceneaux fails to

establish that his pretrial identification was impermissibly suggestive under the facts of this case or that his identification was unreliable.  Likewise, he fails to show that his counsel was deficient for failing to object to the pretrial identification procedures used by police.  Absent a showing that his counsel failed to raise a meritorious objection and that the outcome would have been different, Arceneaux fails to demonstrate deficient performance or actual prejudice.  *See Parr*, 472 F.3d at 256.  Accordingly, Arceneaux fails to establish a valid ineffective-assistance claim in connection with his identification.

In summary, Arceneaux has not established deficient performance or actual prejudice, and he further fails to demonstrate that he received ineffective assistance of counsel at his trial.  Arceneaux likewise fails to show that the state court's decision to reject his claim was contrary to clearly established Supreme Court precedent.  Accordingly, Arceneaux fails to show that he is entitled to relief on his claim for ineffective-assistance under the deferential standard found in 28 U.S.C. § 2254(d).

## B.    Procedural Default

With the exception of the claims concerning his trial counsel's effectiveness, the respondent maintains that all of Arceneaux's remaining claims are barred from federal habeas corpus review by the doctrine of procedural default.  As outlined briefly below, a review of the record shows that Arceneaux has procedurally defaulted his claims challenging the legal sufficiency of the evidence, the trial court's definition of reasonable doubt, the prosecutor's use of peremptory challenges during voir dire, the trial court's evidentiary ruling, and the effectiveness of appellate counsel.

22

The record shows that, although Arceneaux challenged the factual and legal sufficiency of the evidence on direct appeal, his petition for discretionary review to the Texas Court of Appeals challenged only the factual sufficiency of the evidence.  Because Arceneaux did not present a challenge to the legal sufficiency of the evidence to the state's highest court of criminal jurisdiction, this claim is unexhausted.  The Fifth Circuit has recognized that where, as here, a habeas petitioner has failed to raise an insufficiency-of-the-evidence claim properly on direct appeal, the claim is barred from federal review by the doctrine of procedural default.  *See West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997);  *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994).

The record shows that Arceneaux raised claims concerning the trial court's definition of reasonable doubt, the prosecutor's use of peremptory challenges during voir dire, and the trial court's evidentiary ruling on state habeas corpus review, but that these claims were dismissed for procedural reasons because Arceneaux did not challenge these issues on direct appeal.  *See Ex parte Arceneaux*, No. 66,878-01 at 65 (citing *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998)).  Arceneaux's failure to raise these claims in a procedurally proper manner deprived the state court of the opportunity to review his allegations, resulting in a procedural default.  *See Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).  Because the last state court to consider these claims expressly and unambiguously based its denial of relief on a state procedural default, these claims are barred from federal review. *See Coleman v.*

23

*Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995).

The record further confirms that Arceneaux did not raise a claim alleging ineffective assistance of counsel on appeal at any time during his state court proceedings, meaning that this claim is unexhausted. *See* 28 U.S.C. § 2254(b). Arceneaux could have, but did not, present this claim on state habeas corpus review. Because a second state habeas application by Arceneaux would likely be dismissed as an abuse of the writ, this claim is procedurally barred. *See Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir.) (citing *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (citation omitted)), *cert. denied*, 541 U.S. 1087 (2004).

Based on this record, Arceneaux's claims challenging the legal sufficiency of the evidence, the trial court's definition of reasonable doubt during voir dire, the prosecutor's use of peremptory challenges during jury selection, the trial court's evidentiary ruling concerning the firearm, and the effectiveness of appellate counsel are barred from federal habeas review by the doctrine of procedural default. Where a state prisoner has committed a procedural default, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (explaining that the cause and prejudice standard is "grounded in concerns of

comity and federalism"); *Coleman*, 501 U.S. at 750 (recognizing "the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them").

Arceneaux does not demonstrate that the fundamental-miscarriage-of-justice exception applies in this case.[3]  Accordingly, federal habeas corpus review of the merits of his defaulted claim depends on whether he can demonstrate cause and actual prejudice for his failure to present his claims properly at the state court level.  The Supreme Court has explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim."  *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir.), *cert. denied*, 520 U.S. 1267 (1997).  Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different.  *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000), *cert. dism'd*, 531 U.S. 1134 (2001) (citing *Strickler v. Green*, 527 U.S. 263, 119 S. Ct. 1936, 1952 (1999)).

---

[3]    A fundamental miscarriage of justice may be found if the petitioner can show that he is actually innocent of the crime of which he was convicted. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). A petitioner who claims that he is actually innocent of the underlying crime must show that, based on reliable evidence not presented at trial by reason of a constitutional violation, it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *See House v. Bell*, — U.S. —, 126 S. Ct. 2064, 2076-77 (2006); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Arceneaux does not make any effort to demonstrate cause for his defaulted claims. Arceneaux does claim that he received ineffective assistance of counsel during his direct appeal. Ineffective assistance of counsel may, in some circumstances, constitute cause for a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). As noted above, however, Arceneaux did not raise a claim of ineffective assistance on appeal in his state habeas corpus application. Importantly, the Supreme Court has emphasized that a claim of ineffective assistance must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards*, 529 U.S. at 452 (quoting *Carrier,* 477 U.S. at 489). Because Arceneaux's ineffective-assistance-of-appellate-counsel claim was not presented to the state courts, this claim is unexhausted and cannot satisfy the cause exception. *See id*.

Arceneaux points to no other valid basis for cause in this instance for the procedural default. More significantly, the Court has considered Arceneaux's defaulted claims and finds they are without merit for reasons discussed briefly below. Because Arceneaux fails to demonstrate that his defaulted claims have any merit, he further fails to establish that he will suffer any actual prejudice as the result of his procedural default. Absent a showing of cause and actual prejudice, his remaining claims are barred from federal review. The respondent is entitled to summary judgment on this issue. Although all of his remaining claims are procedurally barred, the Court will briefly address the merits of Arceneaux's defaulted claims below.

### C.      Sufficiency of the Evidence

Arceneaux insists that he is entitled to relief because there was insufficient evidence to support his conviction for aggravated robbery. In particular, he claims that the evidence was insufficient because "the complainant did not see a gun and the police did not recover one." Arceneaux reasons that, without evidence that a gun was used, he could not be convicted of aggravated robbery. In addition to being procedurally barred, any challenge to the sufficiency of the evidence is without merit.[4]

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal standard found in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir.) (citation omitted), *cert. denied*, 546 U.S. 831 (2005). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. In conducting that review, a federal habeas corpus court may not

---

[4]     Arceneaux attempts to challenge the factual sufficiency of the evidence. The respondent correctly notes that challenges to the factual sufficiency of the evidence are not cognizable on federal habeas corpus review of a state court conviction. A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir.), *cert. denied*, 510 U.S. 1025 (1993). Under Texas law, evidence is factually insufficient as a matter of law if the proof adduced at trial does not conform to the jury charge. *See Brown v. Collins*, 937 F.2d 175, 176 (5th Cir. 1991). This determination is one based on state evidentiary law and, therefore, presents no issue of "constitutional caliber." *Id.*; *see also Pemberton*, 991 F.2d at 1223 (explaining that state evidentiary law "has no effect on our review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution"). Because Arceneaux's challenge to the factual sufficiency of the evidence does not implicate a constitutional issue, federal habeas corpus review is unavailable.

substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the prosecution. *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). "Where a state appellate court has conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994) (citation omitted).

Arceneaux was charged with aggravated robbery with a deadly weapon, namely, a firearm. Arceneaux complains that his conviction for aggravated robbery is unsupported by sufficient evidence because there was no proof that a deadly weapon was used to commit the offense. Arceneaux made a similar challenge to the factual and legal sufficiency of the evidence on direct appeal. In affirming the conviction, the intermediate appellate court rejected Arceneaux's claim after concluding that the evidence was both factually and legally sufficient to support the conviction for aggravated robbery:

> We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict and then determining whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004), *cert. denied*, — U.S. —, 125 S. Ct. 1697, 161 L.Ed.2d 528 (2005). In our review of the factual sufficiency of the evidence, we view the evidence in a neutral light, and we set aside the verdict only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Id.* (citing *Zuniga v. State*, 144 S.W.3d 477, 483 (Tex. Crim. App. 2004)). In conducting a factual sufficiency review, we must "mention what the parties assert is the most important or most relevant evidence supporting a claim that the evidence is factually insufficient." *Sims v. State*, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003).

Aggravated Robbery

28

Here, a jury found Arceneaux guilty of aggravated robbery with a firearm. A person commits robbery if, in the course of theft, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death, with intent to obtain or maintain control of the property. TEX. PEN. CODE ANN. § 29.02(a)(2) (Vernon 2003). A robbery becomes an aggravated robbery if the actor "uses or exhibits a deadly weapon" during it. TEX. PEN. CODE ANN. § 29.03(a)(2) (Vernon 2003). Arceneaux contends the evidence is neither factually nor legally sufficient to support a finding that he used or exhibited a firearm during the robbery because Garcia did not see a gun and the police did not recover one.[5]

In relation to a deadly weapon, the term "use" means to employ, or to apply the deadly weapon to achieve an intended result. *Patterson v. State*, 769 S.W.2d 938, 940 (Tex. Crim. App. 1989). A deadly weapon is exhibited when it is consciously shown, displayed or presented for view. *Id.* "[O]ne can 'use' a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it." *Id.*; *see also McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000) (concluding that same analysis is "indeed relevant to interpreting the aggravated robbery section.").

The Texas Court of Criminal Appeals has found that circumstantial evidence may be sufficient to support a finding that a defendant used a pistol during a robbery, even if the complainant never saw the pistol. *See Moore v. State*, 531 S.W.2d 140, 142 (Tex. Crim. App. 1976).[6] In *Moore*, the issue was whether the State proffered sufficient evidence for the jury to find that the defendant used a pistol in robbing the complainant. The complainant did not see a pistol during the robbery, but he heard one of the defendants tell the other defendant to keep "his shit on him," and this slang was interpreted to refer to

---

[5] Arceneaux assumes that the State had to prove that he both used "and" exhibited a deadly weapon because the State alleged such in its indictment. Alleging in the conjunctive that a defendant used and exhibited a weapon does not require the State to prove that the defendant did both. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (holding that "although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive.").

[6] *See also Taylor v. State*, 637 S.W.2d 929, n. 3 (Tex. Crim. App. 1982) (stating that "*Moore* stands for the proposition that the victim need not actually see the deadly weapon, but only needs to be aware that one is being used.") (overruled on other grounds by *Garrett v. State*, 749 S.W.2d 784, 791 (Tex. Crim. App. 1986)).

a pistol. *Id*. at 141. The complainant also heard what he thought was a revolver being cocked and a cylinder of a pistol rolling. *Id*. The police arrested the defendants, in the complainant's car, about thirty minutes later, but never found a gun. *Id*. The court held that the conversation between the two defendants and the sound of a pistol "gave rise to a reasonable inference that the robbery was committed with a pistol" and, although the evidence of a pistol being used was circumstantial, it was "more than sufficient to support the conviction." *Id*. at 142; *see also Woods v. State*, 653 S.W.2d 1,4 (Tex. Crim. App. 1982) (holding circumstantial evidence sufficient to show robbery committed using and exhibiting pistol when complainant did not see gun but felt it poked into his side and defendant stated he had gun).

As in *Moore*, in this case, Garcia never viewed a gun, but Arceneaux continually kept one beneath his shirt and told Garcia that he "got pistol." Moreover, our Court upheld a deadly weapon finding under similar facts in *Barehill v. State*, 740 S.W.2d 572 (Tex. App. — Houston [1st Dist.] 1987, no pet.). In *Barehill*, the defendant and another male entered the restaurant with their right hands covered by brown bags. *Id*. at 573. The two men made several statements indicating that they had guns. *Id*. The complainant testified that she did not see a gun, but feared that the defendant would shoot her. *Id*. The defendant denied the robbery and testified that he did not own a gun. *Id*. A rebuttal witness testified that she saw the defendant three days later use a gun to commit an extraneous robbery. *Id*. We held that the evidence was sufficient to convict the defendant of aggravated robbery. *Id*. at 574; *see also Webber v. State*, 757 S.W.2d 51, 52 (Tex. App. — Houston [14th Dist.] 1988, pet. ref'd) (holding evidence sufficient to support deadly weapon finding when co-defendant put hand on something inside shirt and threatened to kill victim if he did not relinquish money from cash register).

Arceneaux contends that these cases are distinguishable because in each of them "there is some evidence besides the robber's claim to have a gun to establish the actual existence of the firearm . . . [and] in the case at hand, no corroborating elements are present." He further contends that a defendant's statement that he has a gun is insufficient circumstantial evidence to support a finding that indeed he had one. Here, however, additional evidence corroborates Arceneaux's statement that he carried a gun. Specifically, Arceneaux kept his hand under his shirt throughout the robbery, as if to conceal a gun. This evidence, similar to a hand concealed in a paper bag, is corroborating evidence that Arceneaux used a gun. Arceneaux's statement and actions caused Garcia to believe that he carried a firearm. Arceneaux used that threat to force Garcia to get out of his car, surrender his wallet, take off his

shoes and socks, and lie on the ground. We hold that this evidence, although circumstantial, is legally sufficient to support a finding that Arceneaux used a firearm during the robbery.

Arceneaux claims that the evidence is factually insufficient because circumstantial evidence indicates that he did not have a gun — Garcia did not see a gun during the robbery and the police did not find one thereafter. Arceneaux's own statements and actions, however, clearly indicate that he had a gun during the robbery. Moreover, Arceneaux had ample time to dispose of the gun after the robbery and before being arrested. Viewing the evidence in a neutral light, we hold that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust and that this circumstantial contrary evidence is not so strong that the standard of proof beyond a reasonable doubt could not have been met.

*Arceneaux v. State*, 177 S.W.3d 928, 929-32  (Tex. App. — Houston [1st Dist.] 2005, no pet.) (footnotes in original).  The appellate court held, therefore, that the evidence was legally and factually sufficient to support the conviction for aggravated robbery.  *See id*. at 932.

As noted above, the evidence is sufficient under the *Jackson* standard, if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  Under this standard, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict."  *Ramirez*, 398 F.3d at 695.  Based on its independent review of the record, and in deference to the state appellate court's reasoned opinion, this Court concludes that a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt.  Because Arceneaux fails to show that his conviction was supported by insufficient evidence in violation of the *Jackson v. Virginia* standard, he does not demonstrate that the state court's decision to reject this claim was

contrary to, or involved an unreasonable application of, clearly established Supreme Court

precedent.  Therefore, the respondent is entitled to summary judgment on this claim.

### D.     Trial Court's Definition of Reasonable Doubt During Voir Dire

Arceneaux contends that he is entitled to relief because the trial court violated his right

to due process during voir dire when it erroneously defined "reasonable doubt."  It appears

from the petition that Arceneaux faults the following comments made by the trial court to

prospective jurors during its preliminary questioning of the venire on their understanding of

the State's burden of proof beyond a reasonable doubt:

> All right.  The State always has the burden of proof in any criminal case.  You knew that, too.  And that is by proof beyond a reasonable doubt.

> Now, reasonable doubt, beyond a reasonable doubt is a term that's not strange to anybody here; is it?  You have heard that time and time again.  You read it in the newspaper every day.  You hear about it on television.  But does anybody really know what that means?  You are very familiar with the term, but does anybody really know?  If somebody pushed you, could you tell them what it really means?  No?

> Don't feel bad if you don't [know], because I can't tell you, either.  There is no legal definition of it.  So, I won't be able to define it for you in the jury charge.  But I can tell you what it isn't.  And sometimes if you know what it isn't, it is kind of more clear what it is.  And remember when the Legislature writes the law, they choose the words to put in the statute.  They put the words in the books.

> And sometimes the words that they don't use are as important as the ones that they do, because they didn't say beyond all doubt or beyond a shadow of a doubt.  They said beyond a reasonable doubt; okay?  It is beyond a reasonable doubt.  Not beyond a shadow of a doubt or beyond all doubt.

Court Reporter's Record, vol. 2, at 20-21.  After making these initial comments, the trial court then began to question prospective jurors on their understanding about the reasonable-doubt standard.

Arceneaux apparently contends that the trial court's approach violated his constitutional right to due process because it did not follow the definition approved for use in Texas jury instructions.  For reasons discussed above, this claim is barred from review by the doctrine of procedural default and Arceneaux has not met his burden to overcome his default.  Nevertheless, the state habeas corpus court considered this claim in the alternative and, without waiving the procedural bar, found no abuse of discretion on the trial court's part.  *See Ex parte Arceneaux*, No. 66,878-01 at 65.  Arceneaux does not demonstrate that the state habeas corpus court's decision was incorrect or unreasonable.

In support of his claim that the trial court's comments violated the constitution, Arceneaux relies on several decisions from the United States Supreme Court and the Texas Court of Criminal Appeals, which found error in jury instructions given on the definition of reasonable doubt.  *See Victor v. Nebraska*, 511 U.S. 1 (1994);  *Estelle v. McGuire*, 502 U.S. 62 (1991); *Cage v. Louisiana*, 498 U.S. 39 (1990);  *Jackson v. Virginia*, 443 U.S. 307 (1979); *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000); and *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991).  These cases are distinguishable, however, because each involves a challenge to the final set of instructions given to the petit jury after the close of evidence but before deliberation.  None of these decisions involve the initial inquiry made by the trial court during its preliminary questioning of prospective jurors during voir dire.

33

The jury instructions given to the petit jurors prior to deliberation contained the following instruction on the State's burden of proof:

> The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so you must acquit the defendant.
>
> It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.
>
> In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."

Clerk's Record at 59. Arceneaux does not dispute that the trial court's instructions to the petit jury accurately conveyed the reasonable-doubt standard of proof and he does not show that the jury was confused by the trial court's comments during voir dire. As the Supreme Court has observed, comments by the trial court and counsel during voir dire are "surely a distant and convoluted memory" by the time jurors begin to deliberate. *Penry v. Johnson*, 532 U.S. 782, 802 (2001). Arceneaux does not allege any facts showing that the jurors misunderstood the instructions or convicted him based on proof that was insufficient to meet the reasonable-doubt standard required by the Due Process Clause. *See In re Winship*, 397 U.S. 358, 364 (1970). Arceneaux does not demonstrate that the trial court erred or abused its discretion with respect to the explanation given during voir dire. More importantly, he fails to show that the state habeas corpus court's decision to reject this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

Therefore, Arceneaux fails to show that he is entitled to habeas corpus relief under the deferential standard of review found in 28 U.S.C. § 2254(d).

### E.    Prosecutorial Misconduct During Jury Selection

Arceneaux contends that he is entitled to relief because the prosecutor engaged in misconduct during jury selection, thereby violating his right to a fair trial by an impartial jury, by striking "Black veniremen" from the panel of potential jurors.  Arceneaux apparently complains that, by removing these jurors, the prosecutor violated his right to a fair trial before an impartial jury under *Batson v. Kentucky*, 476 U.S. 79 (1986).

Claims brought under *Batson* are governed by the following methodology: (1) the defendant must make an initial *prima facie* showing that the prosecutor exercised his peremptory strikes on the basis of race; (2) the burden of production then shifts to the prosecutor to articulate a race-neutral reason for challenging the venire member; and (3) finally, the trial court must decide whether the defendant has sustained his burden of proving purposeful discrimination.  *See Soria v. Johnson*, 207 F.3d 232, 236 (5th Cir.) (citing *Thompson v. Cain*, 161 F.3d 802, 810-11 (5th Cir.1998)), *cert. denied*, 530 U.S. 1286 (2000). To establish a *prima facie* case for habeas corpus relief, Arceneaux must demonstrate that the prosecutor exercised peremptory strikes against minority venire members and that the relevant circumstances raised an inference of purposeful discrimination. *Batson*, 476 U.S. at 96.  An inference may be drawn from such circumstances as a "pattern" of strikes against minority venire members and the remarks made by a prosecutor during voir dire. *Id*. at 96-97.

35

The record reflects that Arceneaux's counsel raised the following objection to the State's peremptory challenges.  After the prosecutor challenged potential juror no. 8, Brian Keith Mayes, who was described as "a black American" of the same race as Arceneaux, the defense raised the following objection:

> DEFENSE:   One other thing, Judge.  The Defense has an objection to the State striking Juror No. 8.
>
> COURT:   Okay.
>
> DEFENSE:   Mr. Mayes, —M-a-y-e-s.  Mr. Mayes is a black American, as is the defendant in this case Mr. Arceneaux.  And I did not hear Mr. Mayes say anything that was troubling in terms of his ability to follow the law.  And I would ask the State to explain for the record why it is that they felt [it] incumbent them to strike him.

Court Reporter's Record, vol. 2, at 127.  Outside the panel's presence, the prosecutor offered the following explanation for his decision to challenge potential juror no. 8:

> STATE:   . . . . From almost the minute that the panel was seated, Mr. Mayes sat with his arms folded, [and] was clearly not happy to be here.  He glared at the State during the Judge's voir dire.  During my voir dire he had two sarcastic responses to questions that I had[.]
>
> Also, his non-verbals in terms of his nodding of the head during my questions about the State having a weapon during its case-in-chief and the one-witness rule, in my opinion he gave unfavorable, unfavorable responses to the State.
>
> It wasn't enough to move for cause, like I did with Juror No. 5, but those are my reasons.
>
> COURT:   Okay.  I will find that the State's use of peremptory challenges are based on race neutral reasons and overrule your objection.

*Id.* at 128.  Defense counsel did not object to any of the other peremptory challenges made by the State.[7]

The state habeas corpus court considered Arceneaux's *Batson* challenge in the alternative and, without waiving the procedural bar, found no abuse of discretion on the trial court's part for overruling the objection.  *See Ex parte Arceneaux*, No. 66,878-01 at 65. Implicitly, the state habeas corpus court also found no misconduct on the part of the prosecutor in connection with the State's peremptory challenges.  *See id.*  Arceneaux does not allege sufficient facts showing that the prosecutor acted with impermissible race-based animus and he does not otherwise show that potential jurors were challenged pursuant to any other improper motive.[8]  Based on this record, Arceneaux fails to demonstrate that the state habeas corpus court's decision to reject this claim was contrary to, or involved an

---

[7]     In the supporting memorandum that he submitted on state habeas review, Arceneaux complained that other black jurors were stricken from the panel.  *See Ex parte Arceneaux*, No. 66,878-01 at 18-23 (Memorandum, at pages 7-12). Significantly, however, Arceneaux's counsel objected only to the State's peremptory challenge toward potential juror no. 8, identified as Brian Keith Mayes.  *See* Court Reporter's Record, vol. 2, at 127.  Arceneaux, who focused his briefing on the State's peremptory challenge to Mr. Mayes, does not complain that his trial attorney was deficient for failing to object to the other peremptory challenges used by the State.  Likewise, Arceneaux does not allege specific facts showing that any other peremptory challenges were invalid and the record does not otherwise reveal grounds for an objection.  Because no *Batson* objection was raised in the trial court with respect to these potential jurors, the Court declines to review the issue further.

[8]     Although Arceneaux proceeds *pro se*, he is still required to provide sufficient facts in support of his claim for relief.  *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."  *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

unreasonable application of, clearly established Supreme Court precedent.  Therefore, Arceneaux fails to show that he is entitled to habeas corpus relief under the standard found in 28 U.S.C. § 2254(d).

### F.    Trial Court's Evidentiary Ruling

Arceneaux contends that he is entitled to relief because the trial court abused its discretion by admitting certain evidence.  In particular, Arceneaux faults the trial court's decision to admit State's Exhibit No. 1, a pistol, over his counsel's timely and proper objection.

To the extent that this claim is not procedurally barred, Arceneaux fails to show that he is entitled to federal habeas corpus relief as a result of the trial court's evidentiary ruling. At trial, the State introduced a pistol as an exhibit for demonstrative purposes only to help explain certain testimony given by the victim, Antonio Garcia, as he recounted how the robbery occurred:

> STATE:    Mr. Garcia, prior to coming in here today did I show you this weapon outside in the other room?
>
> GARCIA:   Yes.
>
> STATE:    Okay.  Now you don't know — this isn't the weapon that was there on April 21st; right?
>
>             Just yes or no?
>
> GARCIA:   No.
>
> STATE:    But would this — but would using this weapon help you explain your testimony more clearly to the jurors?

38

GARCIA:   Yes.

STATE:   Okay.

Your Honor, tendering to Defense Counsel what's been marked for identification purposes as State's Exhibit No. 1.

DEFENSE:   Judge, I object to State's Exhibit No. 1.

STATE:   Seeking to use it for demonstrative purposes only, Judge; not seeking to admit it into evidence.

COURT:   Okay.  Your objection is overruled for demonstrative purposes only.

Court Reporter's Record, vol. 3, at 26-27.  After the objection was overruled, Garcia used the exhibit to demonstrate for the jury the way in which Arceneaux had committed the offense.  *See id.* at 28.

The admissibility of evidence is a matter governed by state law.  Even assuming there was an error, an alleged violation of state law does not merit federal habeas corpus relief. As the Supreme Court has held repeatedly, "federal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also* 28 U.S.C. §§ 2241(c); 2254(a) (providing that federal writ of habeas corpus "shall not" issue unless a prisoner shows that he is in custody in violation of the Constitution or laws of the United States).  A federal habeas corpus court will not grant relief from errors in a state trial court's evidentiary rulings, if any, unless those errors resulted in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause.  *Neal v. Cain*, 141 F.3d 207, 214 (5th

Cir. 1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983), *cert. denied*, 466 U.S. 984 (1984)).

The item at issue was not admitted into evidence as proof that a gun was used to commit the robbery, but was used instead as a prop to demonstrate the way the robbery occurred.  Arceneaux fails to show that the trial court's decision to allow the weapon to be used an exhibit in this manner, for demonstrative purposes only, was erroneous.  Arceneaux fails to show that the trial court abused its discretion.  More importantly, Arceneaux fails to demonstrate that the state habeas corpus court's decision to reject this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, Arceneaux fails to show that he is entitled to habeas corpus relief under the standard found in 28 U.S.C. § 2254(d).

### G.    Ineffective Assistance of Counsel on Appeal

Arceneaux contends that he is entitled to relief because he was denied effective assistance of counsel on appeal.  In particular, Arceneaux complains that his appellate counsel inadequately failed to challenge the sufficiency of the evidence in support of his aggravated robbery conviction because there was no proof that a gun was "used" to commit the offense.  Arceneaux fails to show that he is entitled to relief.

The Fourteenth Amendment to the United States Constitution guarantees a criminal appellant the right to counsel in his first appeal of right.  *See Evitts v. Lucey*, 469 U.S. 387 (1985); *Douglas v. California*, 372 U.S. 353 (1963).  The right to counsel, where present, also entails "the right to the effective assistance of counsel." *McMann v. Richardson*, 397

U.S. 759, 771 n.14 (1970).  "'Persons convicted of a crime are entitled to receive effective assistance of counsel in their first appeal of right,' but counsel is not required to raise every nonfrivolous issue."  *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001) (quotation omitted).  The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal."  *Smith v. Robbins*, 528 U.S. 259, 278 (2000).

A habeas corpus petitioner who claims that he was denied the right to effective assistance of counsel on appeal must satisfy the above-referenced *Strickland* standard by showing that his counsel's performance was deficient, and that counsel's deficient performance resulted in actual prejudice.  *See Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006), *cert. denied*, — U.S. —, 127 S. Ct. 2129 (2007).  Because there is no right to appellate counsel in the absence of a nonfrivolous issue for appeal, a petitioner challenging the effectiveness of his appellate attorney must demonstrate deficient performance by showing that his counsel "was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them."  *Robbins*, 528 U.S. at 285.  If the petitioner succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal."  *Id.*

Arceneaux, who faults his appellate attorney's effort to challenge the legal and factual sufficiency of the evidence on direct appeal, does not allege facts showing that his attorney failed to raise a meritorious argument or claim.  As discussed in more detail above,

41

Arceneaux does not establish that the evidence was legally insufficient. Arceneaux further fails to establish that the evidence was factually insufficient either. Arceneaux has otherwise failed to demonstrate a viable claim. Absent a showing that his counsel had, but failed to present, a non-frivolous claim, Arceneaux fails to show deficient performance or actual prejudice as the result of his appellate counsel's representation. Accordingly, Arceneaux has not established a valid claim for ineffective assistance of counsel on appeal.

### H.  Cumulative Error

In a separate ground for relief, Arceneaux alleges that he is entitled to relief because of the cumulative effect of "serious flaws" in his trial. Without providing any argument, he lists the following examples of the flaws that he claims resulted in an unfair proceeding: (1) the prosecutor's use of a weapon (State's Exhibit No. 1) for demonstrative purposes; (2) misconduct by the translator; (3) the fact that there was no other witness to the crime except for the victim; and (4) inaccurate police reporting of the victim's initial description of the offense. Arceneaux also faults generally the failure of his trial attorney to preserve error for appeal by raising objections.

Arceneaux did not present a claim of cumulative error in state court. Accordingly, this claim is procedurally barred from federal review. Moreover, Arceneaux fails to show that he is entitled to relief based on cumulative error. Federal habeas corpus relief may be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for purposes of habeas corpus review; and (3) the

errors "so infected the entire trial that the resulting conviction violates due process." *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir.) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-49 (1973)), *cert. denied*, — U.S. —, 128 S. Ct. 34 (2007); *see also Nobles v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996).  As is apparent from this standard, and as the Fifth Circuit has stated explicitly, where individual allegations of error are not of constitutional stature or are not errors, there is "nothing to cumulate."  *Turner*, 481 F.3d at 301 (citations omitted).

Arceneaux, who provides only conclusory allegations in support of this claim of cumulative error, has not established any error of constitutional dimension.  The alleged errors that he identifies are procedurally barred for reasons discussed previously in this case. Likewise, he has not shown that his trial was so permeated with error that his conviction violates due process. Therefore, Arceneaux has not demonstrated that cumulative error requires habeas corpus relief.  Because none of the grounds for relief presented by Arceneaux are valid, the respondent is entitled to summary judgment and the federal habeas corpus petition must be dismissed.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255

require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not

debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.   Therefore, a certificate of appealability will not issue.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.   The respondent's motion for summary judgment (Doc. # 6) is **GRANTED**.

2.   The petition for a writ of habeas corpus (Doc. # 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

3.   A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on  February 7th , 2008.


Nancy F. Atlas
United States District Judge

45